IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BARBARA FERGUSON,

                Plaintiff,          OPINION AND ORDER

v.

                                            18-cv-936-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Barbara Ferguson seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act from February 2, 2015, through September 18, 2017.[1] Ferguson contends that remand is warranted because the administrative law judge ("ALJ") erred: (1) in assigning only "little weight" to the opinion of her treating physician, Dr. Boehlke-Bray; and (2) by failing to resolve a conflict between the vocational expert's testimony and information in the Dictionary of Occupations Titles ("DOT").[2] Because the court rejects both challenges raised on appeal, the court will affirm the partial denial of benefits.

---

[1] For obvious reasons, Ms. Ferguson does *not* seek review of that portion of the ALJ's decision finding her disabled on the date of her 50th birthday -- September 19, 2017.

[2] Plaintiff also purports to raise a third ground on appeal -- that the ALJ erred in failing to account for Dr. Boehlke-Bray's opinion that Ferguson could only "rarely" finger, grasp or handle, could only work 4 of 8 hours, lift less than 10 pounds, and would miss 4 days per month of work. This argument, however, is duplicative of the first argument Ferguson raised on appeal -- that the ALJ improperly discounted the opinion on her treating physician. Even if it did somehow constitute a separate ground, the court rejects it for the same reasons explained in considering plaintiff's challenge to the ALJ's consideration of her treating physician opinion.

BACKGROUND[3]

A. **Overview of Claim**

Plaintiff Barbara Ferguson applied for social security supplemental benefits on February 2, 2015, claiming an alleged onset date of January 1, 1992. At the hearing before the ALJ, Ferguson amended her alleged onset date to February 2015. With a birth date of September 19, 1967, Ferguson was deemed a "younger individual" until she turned 50 on September 19, 2017, at which points she became an individual "closely approaching advanced age" under 20 C.F.R. § 416.963. Ferguson has past relevant work as a home attendant, which is considered a medium exertional level job. She claimed disability based on a number of conditions, including: fibromyalgia; back and neck problems; thyroid condition; depression; permanent pancreatitis; "orange melengionemia"/brain tumor; nerve problems; vision problems; migraine headaches; and tingling in hands and feet. (AR 81.)

B. **ALJ's Decision**

ALJ Micah Pharris held a video hearing on January 16, 2018, at which plaintiff appeared personally and by the same counsel representing her on appeal. The ALJ concluded that as of the alleged onset date, Ferguson suffered from the following severe impairments: fibromyalgia, also diagnosed as chronic pain and chronic pain syndrome; cervical, lumbar, and thoracic degenerative disc disease; chronic but stable pancreatitis; obesity; chronic headaches (non-migraineous); benign cavernous sinus hemangioma; and major depressive disorder. (AR 17.) The ALJ further concluded that a number of other

---

[3] The following facts are drawn from the administrative record, which can be found at dkt. #7.

medical conditions did *not* constitute severe impairments, and plaintiff does not challenge any of these conclusions on appeal. Next, the ALJ considered whether any of her impairments or combination of impairments met or medically equaled one of the listed impairments, finding that they did not. Here, too, plaintiff does not challenge these findings, including the ALJ's extensive discussion of plaintiff's mental impairment and her limitations with respect to the "paragraph B" criteria.

The ALJ next found that Ferguson had the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations:

> The individual may never climb ropes, ladders or scaffolds; and may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual may occasionally reach overhead bilaterally. The individual may have no exposure to unprotected heights or hazards. The individual would need to work indoors in a location with access to a restroom. The individual is limited to simple routine tasks at a nonproduction pace and, in order to minimize distractibility, may have only occasional superficial contracts with supervisors, coworkers, and members of the public. By superficial, I mean rated no lower than an 8 on the Selected Characters of Occupations' people rating.

(AR 20-21.)

In formulating the RFC, the ALJ noted Ferguson's own testimony that: (1) she could not engage in work activity as a result of pain (specifically, lower back pain), headaches and chronic pancreatitis; (2) she obtained a walker four or five months before the hearing; (3) her pancreatitis causes gastrointestinal issues resulting in accidents; (4) she has difficulty dressing herself and doing activities around the house; and (5) she has memory problems. (AR 21.) With respect to her physical limitations, however, the ALJ found:

> The medical records prior to the claimant's 50th birthday largely reflect treatment for diagnoses of fibromyalgia, a benign brain tumor, chronic pancreatitis, and complaints of pain. There are few objective findings prior to that time that would suggest any deviation from the physical findings and limitations assessed by the State Agency medical consultants. Those assessments indicated a physical residual functional capacity assessment for a range of work at the light exertional level.

(AR 22.)

Material to plaintiff's challenges on appeal, the ALJ also considered, but discounted, the opinions of plaintiff's treating physician Dr. Laura Boehlke-Bray, finding that her opinions "are not supported by treatment records and rely heavily on the claimant's subjective reports." (AR 22; *see also* AR 27 (placing "very little weight" on Dr. Boehlke-Bray's opinion about limitations).) In particular, the ALJ noted treatment notes reflecting either *no* examinations took place or physical exams that were "cursory and showed minimal findings." (AR 22-23; *see also* AR 24-25 (describing additional records of appointments with Dr. Boehlke-Bray and other physicians).)

However, the ALJ acknowledged that beginning in "mid-to-late 2017, . . . imaging studies do show some, albeit minor lumbar thoracic, and cervical degenerative disc disease," and around that same time, physical examinations started to "actually suggest some limitations." (AR 23; *see also* AR 26 (detailing records post-August 2017 showing increased pain and MRI findings in support).) As for her other medical impairments, the ALJ noted that: her pancreatitis was "stable"; her headaches have improved with the use of Imitrex; and she declined referral to a fibromyalgia treatment program at the Mayo Clinic. (AR 23-24.) As to the latter, plaintiff represented that she believed there may be a similar program

closer to home in Duluth, but the record reflects that she did not pursue this treatment. (*Id*.) Based on this evidence, the ALJ limited plaintiff to sedentary work with the additional limitations described above.

As a result of these findings, the ALJ next concluded that given her RFC, Ferguson was not able to perform any past relevant work. At step 5, the ALJ next concluded that Ferguson was disabled as of her 50th birthday because the ALJ could no longer consider transferability of job skills under the Medical-Vocational Rules. (AR 28 (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appx. 2).) Relying on the vocational expert's testimony, however, the ALJ concluded that before her 50th birthday, there were still jobs in significant numbers in the national economy that Ferguson could have performed.

Also material to plaintiff's challenge on appeal, the ALJ specifically considered whether her additional limitations to even sedentary work precluded her from working before turning 50. The VE testified that based on the hypothetical provided to her, which was consistent with the RFC formulated by the ALJ, Ferguson could perform document preparer, final assembler, and touch-up screener jobs. Specifically, the VE testified that

> for areas not addressed in the DOT, such as overhead reaching, indoor work and work near a restroom, she was relying on her twenty years of experience as a qualified rehabilitation consultant placing individuals in jobs and performing on-site job analysis to know that the jobs identified could be performed with those limitations.

(AR 28; *see also* AR 68-70 (VE's testimony during the hearing).)

### C. Medical Record

At the time of Ferguson's amended, alleged disability onset date of February 2, 2015, the medical records reflect that she was dealing with a cavernous sinus tumor and inflammation of her pancreas. After seeing Ferguson on March 2, 2015, Dr. Laura L. Boehlke-Bray, M.D., indicated that her pancreatitis was "stable" and that she was seeking treatment with neurosurgery for her tumor. Dr. Boehlke-Bray also examined a rash and referred her to dermatology, but otherwise only noted that she "does not appear in any acute distress" and that her "chronic pain" was "stable." (AR 703.) Ferguson then underwent gamma knife radiosurgery on April 23, 2015, to address her benign tumor. In addition, a CT scan to assess upper left quadrant pain from April 2015 showed "normal pancreas, no free fluid, no masses." (AR 710.)

In July 2015, plaintiff sought treatment in the emergency room for back pain and was diagnosed with a strain. While the exam indicated some muscle spasms, Ferguson's straight leg raise test was negative, and she had "good strength in flexion and extension of the lower extremities." (AR 718.)

On September 3, 2015, Ferguson returned to Dr. Boehlke-Bray for a follow-up appointment. (AR 742-43.) While Ferguson complained of chronic pain, Dr. Boehlke-Bray did not conduct a physical examination, but simply refilled her prescription medication for Topamax, Imitrex and Hydrocodone. In a December 22, 2015, appointment, Dr. Boehlke-Bray again reviewed Ferguson's complaints of pain without conducting a physical examination and then refilled her medication prescriptions. (AR 747.) In that same medical note, Dr. Boehlke-Bray also expressed her opinion that

Ferguson is unable to work, though she did not detail any findings with respect to physical limitations in that medical note. (*Id*.)

Dr. Boehlke-Bray next saw Ferguson on June 8, 2016. (AR 749-50.) During this appointment, the doctor noted that Ferguson "does not appear in any acute distress," and further noted on physical examination, that she was "minimally tender in the left upper quadrant and over the pancreas as well," but found that while she complained about left knee pain and swelling, her knee "really is unremarkable as well." (AR 749.) Accordingly, Dr. Boehlke-Bray simply renewed her medications.

During another follow-up appointment on August 29, 2016, Dr. Boehlke-Bray saw Ferguson again. Choosing not to conduct a physical examination, she did review the pain medication prescriptions. (AR 751.) In September 2016, Ferguson was next seen by Megan M. Popp, M.D., in the Physical Medical and Rehab Department for her chronic pain. Noting a "head forward, rounded shoulder posture" and some mild tenderness during her physical examination, Dr. Popp generally found Ferguson to fall within functional limits, including: that range of motion in her hips and knees was "within functional limits"; that she had "full functional use of bilateral upper and lower extremities"; and that her "gait is steady." (AR 756.) X-rays from Ferguson's lumbar spine and pelvis around that same time showed no disc or joint issues. (AR 878-79.) Subsequent visits with Dr. Popp in November 2016 and January 2017 also noted similar findings on physical examination as those described in September. (AR 760, 767.)

In May 2017, Ferguson again saw Dr. Boehlke-Bray, complaining of back pain. Although no physical examination was conducted at that time, Dr. Boehlke-Bray

7

prescribed additional Tramadol. (AR 778-79.) Although Ferguson declined Dr. Boehlke-Bray's offer to refer her to a pain clinic, she was seen by Ifeyina N. Igwe, MBBS, for pain management on July 11, 2017. This physical examination also revealed normal gait, adequate range of motion and flexion with respect to the cervical, shoulder, lumbar, hip and knee regions. (AR 784.) Accordingly, for the pain, Dr. Igwe referred Ferguson to physical therapy.

Unlike the prior physical examinations, the physical therapy notes from August 2017 reveal a "significant increase in pain" after range of motion testing and a straight leg positive test. (AR 789.) Further, an MRI dated September 7, 2017, revealed "[l]eft posterior disc herniation at L5-S1, indenting the thecal sac and minimally also the left S1 nerve root sleeve." (AR 836.) Finally, an October 15, 2017, cervical spine MRI revealed "[b]road-based disc protrusion at C6-6 with narrowing of right lateral recess and right foramen" and "posterior leftward disc protrusion at C6-7 with cord effacement and narrowing of left lateral recess and neural foramen." (AR 829-30.)

On October 26, 2017, Ferguson's treating physician, Dr. Boehlke-Bray, completed a medical source statement, limiting her to 0-2 hours sitting and standing/walking in an 8-hour work days; indicating that she could only occasionally lift less than 10 lbs; limiting her to "rarely" fingering, grasping and handling, and never stopping or crouching; and anticipating that she would be absent more than 4 days per month. (AR 731-32.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge," *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Here, in cursory fashion, plaintiff contends that the ALJ (1) erred in his evaluation of Dr. Boehlke-Bray's October 17, 2017, medical source statement and (2) failed to resolve a conflict between the VE's testimony and the DOT. The court addresses these challenges in turn.

I. Treatment of Dr. Boehlke-Bray's Opinion

Plaintiff first contends that the ALJ provided "no explanation why Dr. Boehlke-Bray's opinion was rejected; there is no discussion explaining and contrasting evidence." (Pl.'s Opening Br. (dkt. #8) 31.) Unfortunately, this gross mischaracterization, which fails

9

to accurately describe the ALJ's decision or explain in any meaningful way how the ALJ's reasoning fell short, is not atypical of plaintiff's counsel. As described above, the ALJ *did* provide reasons for discounting Dr. Boehlke-Bray's opinion, at least as to Ferguson's physical limitations as reflected in the medical records before her marked decline in the late summer, early fall of 2017, which roughly coincided with Ferguson's 50th birthday.[4]

In particular, Dr. Boehlke-Bray's October 17, 2017, medical statement described extreme limitations in Ferguson's physical abilities, including limiting her to sitting less than two hours in an eight-hour workday and lifting no more than ten pounds, and even then only on an occasional basis, among other limitations. As detailed in the court's review of the medical record described above, however, the ALJ appropriately discounted this view of Ferguson's limitations in light of the following: (1) Dr. Boehlke-Bray's saw no need to even undertake a physical examination of Ferguson on multiple occasions, and when she did physically examine Ferguson, her findings suggested only mild or minimal concerns, contrary to a 2015 opinion; (2) the physical examinations of other physicians during the February 2015 to August 2017 period, revealed only mild tenderness with palpitations but normal strength, range of motion and gait when walking; and (3) normal or unremarkable findings resulted from the *only* objective evidence available during this time period (the x-

---

[4] Perhaps there is some room for argument that the ALJ should have expressly acknowledged that (1) the August 10, 2017, physical therapy note of a "significant increase in pain" after range of motion testing and a straight leg positive test (AR 789), or (2) the September 7, 2017, lumbar MRI results (AR 836), as supporting a finding that plaintiff was unable to perform even sedentary work a few weeks before her 50th birthday. Plaintiff, however, did not make this specific argument. If she wishes to pursue a limited claim for remand based on this one-month period preceding her 50th birthday, the court would entertain a motion for reconsideration under Federal Rule of Civil Procedure 59, or, perhaps, the parties could stipulate to such a limited remand.

rays from September 2016).  *See Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (concluding that ALJ properly discredited treating physician's opinion because his "own office records did not support his later expressed opinion that the plaintiff was totally disabled"); *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("[T]he ALJ did not err or improperly 'play doctor' by examining the medical record and determining that Dr. Preciado's conclusions were unsupported by his own notes or contradicted by other medical evidence.").

As part of her challenge, plaintiff also faults the ALJ for failing to consider the factors in 20 C.F.R. § 404.1527(c), including the length, nature and extent of the treatment relationship.  However, the ALJ acknowledged that Dr. Boehlke-Bray was Ferguson's treating physician, and described Ferguson's treatment history with her.  Moreover, § 404.1527(c) lists "supportability" and "consistency" as *factors* the ALJ may consider in determining the amount of weight to place on a treating physician, and, there is no dispute that the ALJ considered these factors along with others.

Accordingly, the court can find no error in the ALJ's treatment of Dr. Boehlke-Bray's opinion or in his rejection of her limitations in crafting an RFC before September 18, 2017.

## II. Contradiction between VE's Testimony and DOT

Plaintiff next contends that reversal is warranted because the ALJ failed to resolve a conflict between the VE's testimony and the DOT as required under SSR 00-4p. Specifically, plaintiff contends that there is a conflict between (1) the VE's testimony that a person limited to "occasional" reaching overhead bilaterally (AR 67) -- among other limitations contained in Ferguson's RFC -- would be able to perform positions as a

document preparer, final assembler and touch-up screener, and (2) the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") for those three jobs, which require the ability to "frequently" reach. (Pl.'s Opening Br. (dkt. #8) 35.)

Under SSR 00–4p, the ALJ has an "affirmative responsibility" to ask the VE if his or her testimony conflicts with the DOT, and if there is an "apparent conflict," the ALJ must obtain "a reasonable explanation" for the conflict before relying on the VE's opinion to support a decision that the claimant is not disabled. SSR 00–4p, 2000 WL 1898704, at *2-*3 (Dec. 4, 2000); *see also Overman v. Astrue*, 546 F.3d 456, 462–63 (7th Cir. 2008); *Prochaska v. Barnhart*, 454 F.3d 731, 734-45 (7th Cir. 2006).

Critically, as the Commissioner points out in his response, it is not clear that there *is* a conflict between the VE's testimony and the DOT. The VE testified that a person limited to occasionally reaching overhead bilaterally could perform these jobs, while the SCOs for these jobs require frequent reaching, they do not require frequent reaching *overhead*. Neither the hypothetical posed to the VE nor the ALJ's RFC for Ferguson limit her reaching in other directions.

Even assuming there is a conflict, however, the ALJ *did* ask the VE to resolve it. Indeed, in arguing for reversal, plaintiff's counsel *again* fails to confront (or worse, deliberately ignores) the ALJ's decision and the hearing transcript. At the hearing, the ALJ had the following exchange with the VE:

> Q. Now, overhead reaching is not in the DOT. Is that right?
> A. That's correct, Your Honor.

> Q. All right. And so what are you relying on with regard to your determination that an individual in these jobs wouldn't have to reach more than occasionally[] overhead?
>
> A. Your Honor, I am basing my opinion on my 20 years of experience as a qualified rehabilitation consultant, working with injured workers and placing them in jobs, as well as, performing onsite job analyses.

(AR 69.) Based on this exchange, the court finds no error in the ALJ's reliance on the VE's testimony in finding that an individual with Ferguson's RFC could perform the three jobs identified above. *Krell v. Saul*, 931 F.3d 582, 584 (7th Cir. 2019) ("[V]ocational experts may rely on publicly available sources as well as data developed through their own experiences and research.").

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Barbara A. Ferguson's application for social security supplemental income is AFFIRMED. The clerk of court is directed to enter judgment for defendant.

Entered this 20th day of February, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge